IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA

v.  NO. 3:21-mj-2786

AUSTIN DOUGLAS KIDD

**ORDER OF DETENTION PENDING TRIAL**

A preliminary hearing was held in this case on March 8, 2021, along with a detention hearing in accordance with the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, to determine under 18 U.S.C. § 3142(f) whether there are conditions of release that will reasonably assure the appearance of the defendant as required and/or the safety of any other person and the community. Defendant Austin Kidd appeared with his attorney, Assistant Federal Public Defender David Baker. Assistant U.S. Attorney Monica Morrison appeared for the government. The Court heard testimony of HSI Special Agent Tiffany Mayo, who testified to the matters described in the complaint (Docket No. 1)[1], to the circumstances of the alleged offense generally, and for purposes of detention. Based on the evidence presented, the Court finds probable cause that the defendant committed the offense charged in the complaint, specifically possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Based on this probable cause finding, a detention hearing is warranted under 18 U.S.C. § 3142(f)(1)(E).

The defendant presented the testimony of his mother, Amy Vanderford, and the testimony of his fiancée, Jessica Reeve, who stated her willingness to be a third-party custodian, and both of whom testified generally about the defendant's personal circumstances. The Court also considered the report of the Office of Probation and Pretrial Services recommending detention.

This order supplements the Court's findings of fact and conclusions of law stated more fully on the record during the hearing, which are incorporated as if set out fully herein. For the reasons stated on the record and detailed below, the government's motion for detention (Docket No. 3) is GRANTED.[2]

---

[1] The redacted, unsealed version of the complaint is found at Docket No. 11.

[2] As provided for in the Court's separate order, if, after receipt and review of the witness statements the government is ordered to produce pursuant to Fed. R. Cr. 26.2,

1

Under the Bail Reform Act, 18 U.S.C. §§ 3142 *et seq.*, a court can order pretrial detention only after a hearing and only in certain eligible cases. 18 U.S.C. § 3142(f). *See also United States v. Salerno*, 481 U.S. 739 (1987) (upholding Bail Reform Act). A defendant may be detained pending trial only if a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

"The default position of the law, therefore, is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). A finding of dangerousness must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f); *Stone*, 608 F.3d at 945. When "risk of flight" is the basis for detention, the United States must satisfy a preponderance of the evidence standard. *United States v. Hinton*, 113 F.App'x 76, 77 (6th Cir. 2004).

In determining whether pretrial detention is appropriate, the factors the court must consider are: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)–(4). The nature and circumstances of the offense include whether it involves a firearm. 18 U.S.C. § 3142(g)(1). The weight of the evidence goes only to the likelihood that the defendant will pose a danger to the community or a risk of flight and is not a pretrial determination of guilt. *Stone*, 608 F.3d at 948. In weighing the strength of the evidence, the court may not modify or limit the defendant's presumption of innocence. 18 U.S.C. § 3142(j). The history and characteristics of a defendant within the meaning of the statute include "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). Also included is whether the defendant was on probation or parole at the time he committed the offense. 18 U.S.C. § 3142(g)(3)(B).

**Section 3142(g) Analysis:** The Court considered the factors set forth in 18 U.S.C. § 3142(g); (1) the nature and circumstances of the offense charged; (2) the weight of the

---

the defendant contends that information in the statements changes the calculus of the probable cause determination or the detention factors, the defendant may move to reopen the hearing.

evidence of dangerousness; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. Based upon the information presented and the factors considered, the Court determined that the defendant must be detained pending trial because:

**( √ )** The government proved by clear and convincing evidence that the defendant is a danger to the community and that no condition or combination of conditions of release would reasonably assure the safety of the community.

**( √ )** The government proved by a preponderance of the evidence that there is a serious risk that the defendant would flee if released pending trial and that no condition or combination of conditions of release would reasonably assure the defendant's appearance as required.

The Court provided its analysis of the Section 3142(g) factors and detailed findings in open court at the end of the detention hearing. The reasons for detention include, without limitation, the following:

- **(√ )** Lack of stable residence
- **(√ )** Lack of stable employment
- **( )** Significant prior criminal history, including charges involving weapons and multiple drug trafficking convictions
- **( )** Lack of significant community or family ties in the Middle District of Tennessee
- **( )** History of alcohol or substance abuse
- **( )** Pattern of failure to comply with conditions of probation
- **( )** Prior attempt(s) to evade law enforcement
- **(√ )** Facing lengthy period of incarceration if convicted
- **( )** Facing deportation after serving any period of incarceration
- **( )** Past use of alias names
- **(√ )** Weight of evidence of dangerousness is strong
- **(√ )** Past history of conduct involving a child victim

3

OTHER REASONS OR FURTHER EXPLANATION:

As noted by the Sixth Circuit, for purposes of the Bail Reform Act, Congress thought it was especially significant if the nature and circumstances of the offense charged involve a minor victim, which this offense does. *Stone*, 608 F.3d at 947; *see also* 18 U.S.C. § 3142(g)(1). That weights this factor in favor of detention. Additionally, the testimony of Special Agent Mayo indicates that the defendant attempted to hide his conduct by accessing images and videos on the so-called dark web through the Tor network[3], which requires a high level of technical sophistication that is not ordinarily possessed by the casual internet user. Further, the testimony indicates that the defendant may have accessed the dark web from multiple locations, including in Texas and two different residential addresses in Clarksville, Tennessee. Based on the totality of the circumstances, this factor weighs in favor of detention.

The evidence of dangerousness also weighs in favor of detention, including based on the circumstances of the offense charged and the testimony presented. The defendant has an admitted long-time predilection for child pornography and a particular preference for young boys between the ages of 11 to early teens. When the defendant was that age, he sexually molested (or attempted to sexually molest) a younger child, for which the defendant was placed in juvenile detention.[4] Of considerable concern to the Court is the unavailability of any residence to which the defendant could be released and his conduct properly supervised. At the time of his arrest, the defendant was living in an apartment without any heat and for which he had been served with a notice of eviction to occur in June. Releasing the defendant to live on his own, unsupervised in what by all accounts is a temporary residence, poses an unacceptable risk of danger. The defendant cannot return to his parent's home, where his children and Ms. Reeve reside. The Court would not find it appropriate for the defendant to return to that home, given the entirety of the evidence presented. Moreover, there appears to be a safety plan in place by the Department of Children's Service, following the execution of the search warrant, which restricts the defendant to only supervised visitation with his children and requires that

---

[3] The Court's understanding of Tor – or originally "the onion router" because it layers a user's traffic like an onion – is that it is a network of servers that randomly route internet traffic to hide the origin of the data and therefore provide an enhanced level of anonymity to users. A Tor network browser is used to access the dark web, which are websites that exist behind multiple layers of encryption and cannot generally be found by using traditional search engines or visited by using traditional web browsers.

[4] To protect the identity of the victim, the Court will not discuss any further details in this Order.

an adult be within the sight, sound, and touch of the children at all times during the visitation.[5] Although the defendant's fiancée indicated a willingness to be a third-party custodian, she would not be living with the defendant and therefore unable to provide the level of needed supervision of the defendant's conduct. Further, for the reasons discussed below, the Court does not consider Ms. Reeve to be a suitable third-party custodian, notwithstanding her sincere desire to support the defendant. The most compelling evidence of dangerousness is the defendant's plan to be employed as a substitute middle school teacher, where he would be surrounded by children of the age that arouse him sexually. The defendant also has small children at home, none of whom have the necessary verbal skills to be able to report any inappropriate conduct by the defendant. On at least one recent occasion, the defendant was discovered by Ms. Reeve leaving his twin sons' room with an erection. Moreover, when Ms. Reeve became suspicious upon finding videos and images on their home device used to connect to the internet prior to moving to Tennessee, she confronted the defendant, who denied any knowledge of the content and refused to seek the mental health treatment urged by Ms. Reeve. If the defendant is not willing to address his sexual attraction to young children despite the pleas of Ms. Reeve, with whom he has been in an 8-year relationship and has three small children, the Court cannot find that there are conditions of release with which the defendant is any more likely to comply with conditions to sufficiently mitigate against the danger that his release would pose. Overall, this factor weighs heavily in favor of detention.[6]

Consideration of the defendant's history and characteristics includes his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). Also, whether the defendant was on probation, parole, or other

---

[5] The defendant's and Ms. Reeves' three children were placed in the legal custody of the defendant's mother and stepfather by a state court in Texas following complaints about the children's welfare that, according to the testimony, are unrelated to the instant charges.

[6] There is some appeal to the defendant's argument that the government's contentions of the defendant's dangerousness are undermined by the undisputed fact that the defendant has been in the community since execution of the search warrant in early November of 2020 until his arrest in March of 2021. However, the Court does not find that this is such a prolonged period that its impact overcomes the strength of the other circumstances that weight this factor in favor of detention.

5

release at the time of the current offense. 18 U.S.C. § 3142(g)(3)(B).[7] Here, the defendant has no prior history of criminal conduct as an adult, but, as expressly noted by the Sixth Circuit, "courts have never required a prior criminal record before ordering detention." *Stone*, 608 F.3d at 949 (citing *United States v. Rodriquez*, 950 F.2d 85, 89 (2nd Cir. 1991) ("Although a prior record of violence eases the government's burden of showing dangerousness, it is not essential.")). The Court heard extensive evidence about the defendant's conduct as a sexual perpetrator while still an adolescent, which although remote, is particularly concerning, given that the defendant has young children, and that he was far along in his efforts to become a substitute middle school teacher. These circumstances add considerable weight to this factor in favor of detention. Another compelling circumstance under this factor is the lack of stable residence to which the defendant can be released and properly supervised, as discussed above. Although both the defendant's mother and Ms. Reeve pledged to help in trying to resolve the issues that led to the eviction notice, there is no assurance that the defendant can remain in the apartment past the June eviction date. Nor can the defendant reside at his mother's home due to the safety plan in place for the defendant's children. Additionally, the Court finds that a third-party custodial arrangement is not feasible. The defendant's past employment history includes IT support and he clearly possesses high-level technical skills. Given the easy availability of access to the internet and the evidence of the defendant's proficiency in utilizing the Tor network for dark web access, there is not a level of reasonable supervision that can be imposed that would adequately assure the defendant does not continue to engage in the same conduct. Further, that level of technological expertise would preclude any kind of at-home job, as that would require the defendant to access the internet. Moreover, the defendant does not have a history of long-term stable employment. Although the defendant appears to have somewhat consistently held a job, the longest time at any one job, according to the testimony, was about 18 months. At the time of his arrest, the defendant had been unemployed for some time. These circumstances further weight this factor in favor of detention. Additionally, while the Court does not doubt the sincerity of Ms. Reeve's intentions to help the defendant, the Court cannot find that she is a suitable third-party custodian. Ms. Reeve testified to some awareness of at least two other instances of conduct by the defendant that raised concerns, which cannot be reconciled with her blanket statement that she does not believe that the defendant would pose any danger if released. Specifically, Ms. Reeve acknowledged that, after execution of the search warrant, she told the defendant's mother

---

[7] Although the Pretrial Services Report does not reflect that the defendant was on release waiting trial on any criminal charges, according to the testimony of Special Agent Mayo, the defendant may have pending petty theft charges in Clarksville. If so, that would additionally weight this factor in favor of detention.

about the incident during which she encountered the defendant leaving their sons' bedroom with an erection. She also testified to finding pornographic videos and images on their home internet access device(s) while living in Texas, about which the defendant denied any knowledge but refused to seek mental health treatment despite Ms. Reeve's urging. This evidence demonstrates that Ms. Reeve is, in fact, concerned about the defendant's conduct, notwithstanding her desire for him to be released. It is undisputed that the defendant does not have healthy sexual outlets. It is also apparent that the defendant has been struggling with his sexual preferences since he was a preteen. Despite this admitted knowledge of those around him and the defendant himself, he has not sought any mental health treatment since he was a teenager, when he was in counseling for 18 months following his release from juvenile detention.[8] The Court does not doubt that the defendant would benefit greatly from emotional and behavioral therapy, including to address his sexual urges. That need, however, does not overcome the substantial weight of the other circumstances in favor of detention. As stated above, that the defendant was unwilling to moderate his conduct or seek help to address his unhealthy sexual behavior despite Ms. Reeve's urging, indicates there are no conditions of release the Court would impose with which he would be any more likely to comply. Upon weighing all these considerations, this factor, too, heavily favors detention.

Many of the same reasons discussed above regarding the other factors also weight the nature and seriousness of the danger presented upon the defendant's release in favor of detention, particularly the evidence of the defendant's sexual preferences for middle school age boys and his intention (prior to his arrest) to place himself in the midst of just such boys as a middle school substitute teacher. As discussed above, there is no practical way for the Court to impose a level of supervision to mitigate against any danger posed to the community. Further, in evaluating whether the Court can impose conditions of release that would reasonably assure the safety of the community, the Court must consider the likelihood that the defendant will abide by those conditions. Based on the totality of the circumstances, the Court cannot make a finding that the defendant would likely comply with conditions of release. All these together add to the potential threat to the community if the defendant were to be released and weight this factor in favor of detention.

Upon review of the evidence with appropriate weight and consideration given to all these factors, and with the recommendation of Pretrial Services for detention, the Court finds the government has met its burden of showing by clear and convincing evidence that there are not conditions of release that can mitigate the risk of harm the defendant's

---

[8] Also concerning to the Court is the fact that the defendant's mother encouraged him to become a middle school substitute teacher, knowing his background.

release would present. Put simply, the number of factors weighing in favor of detention is not the critical determination here; it is the weight of the supporting factors. Those factors are so strongly weighted in favor of detention that they overcome the slight weight of any other factors for release.

The Court also finds by a preponderance of the evidence that there is a likelihood of the defendant's nonappearance. If convicted, the defendant faces a very lengthy sentence, which standing alone may not be enough to carry the government's burden. However, the defendant's precarious living situation and the impracticability of imposing supervision of his conduct, with the other factors considered above, preponderate against a finding that he would be likely to comply with conditions of release, including to appear in this case as required. Considered together, the evidence supports a finding that the defendant's nonappearance is more likely than not.

## PART II – DIRECTIONS REGARDING DETENTION

The defendant is remanded to the custody of the United States Attorney or his designee for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purposes of an appearance in connection with a court proceeding.

## PART III – APPEAL

The defendant was advised in open court and is again reminded here that he may seek review of this Order pursuant to 18 U.S.C. § 3145.

It is SO ORDERED.

_____
BARBARA D. HOLMES
United States Magistrate Judge